OPINION
Defendant Richard L. Petty appeals a summary judgment of the Court of Common Pleas of Richland County, Ohio, entered in favor of plaintiff Bernie F. Cox on his complaint for restitution of monies paid by Cox under an illusory contract between the parties. Appellant assigns three errors to the trial court:
ASSIGNMENTS OF ERROR
 ASSIGNMENT OF ERROR NO. I
 THE TRIAL COURT WAS IN ERROR IN ITS ORDERS OF JUNE 9, 1997 AND MARCH 6, 1998. THE RICHLAND COUNTY COURT OF COMMON PLEAS DOES NOT HAVE JURISDICTION OVER THE PERSON OF RICHARD L. PETTY PURSUANT TO OHIO REVISED CODE 2307.382 AND CIVIL RULE 4.3.
 ASSIGNMENT OF ERROR NO. II
 THERE WAS A CONSTITUTIONAL DEPRIVATION OF DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT ERRED IN DETERMINING THAT THERE WAS PERSONAL JURISDICTION OVER THE PERSON OF RICHARD L. PETTY.
 ASSIGNMENT OF ERROR NO. III
 THE TRIAL COURT WAS IN ERROR IN ITS DECISION OF MARCH 6, 1998. THE CONTRACT BETWEEN APPELLANT, MR. RICHARD L. PETTY AND APPELLEE, MR. COX WAS NOT ILLUSORY AND COX BREACHED THE CONTRACT WHEN HE FAILED TO PAY THE REMAINDER OF THE PURCHASE PRICE.
Appellant's statement on summary judgment pursuant to Loc. App.R. 4 asserts the court's judgment was inappropriate as a matter of law on the undisputed facts of the case.
The record indicates appellee approached defendant Rodney Combs, who is not a party to this appeal. Combs was a driver for RLP Racing, Inc. Cox wished to become involved with the RLP Racing team during the 1994 racing season. RPL Racing, Inc. is based in North Carolina and owned by North Carolina resident, Richard L. Petty. During 1994, 1995, and 1996, Cox served as a racing team spotter for the RLP Racing team.
In 1995, Cox approached Combs with an offer to purchase a percentage of the RLP Racing team. The parties dispute who physically prepared the agreement, and dispute where the document was actually executed. The parties agree the document in question was not executed in Ohio. At the time of execution, Cox delivered to Petty a check for $25,000.00 towards the purchase price of the percentage of the stock. Petty never negotiated the check. Subsequent payments were made either to RLP Racing or to other parties, and not to Petty.
Under the terms of the contract, Cox undertook to make expenditures to keep the RLP Racing team operational until a 1996 sponsor was found. The expenditures were for ordinary, normal and customary expenses for the racing season, including fuel, parts, travel, food and lodging. The contract represented RLP Racing to be a partnership with Petty owning 60 percent and Combs owning 40 percent. In fact, RLP Racing, Inc. was at the time of the contract a North Carolina corporation 100 percent owned by Petty. The corporation owned the racing team and conducted other business as well.
The record indicates Petty never cashed the $25,000.00 check, and asked Cox to hold off making quarterly installments, on the advice of his accountant. In the meantime, from July, 1995 until mid 1996, Cox paid out $197,577.99 in cash for the benefit of RLP Racing. Cox mailed or wired nearly all the funds from Ohio to North Carolina at Combs' request. It was undisputed RLP Racing, Inc. actually received the $197,577.99. It was also undisputed that Combs acted as Petty's agent in the transaction. RLP Racing, Inc. carried the funds on its books as loans from Cox.
In July of 1996, Petty informed Cox neither Cox nor Combs had any interest in RLP Racing, Inc. Although Petty originally agreed to reimburse Cox, in November 1996, Petty asserted his right to retain the advance made by Cox. Petty also demanded the $200,000.00 contract price in return for a transfer of a percentage interest in RLP Racing, Inc. On November 20, 1996, RLP Racing, Inc. sold the racing team in question to a third party.
The trial court found the contract was illusory, as a matter of law, because Cox received no consideration for the money he paid. The court found Petty, the 100 per cent owner of RLP Racing, Inc. derived the benefit of the money Cox paid to the corporation. The court noted where a payor is entitled to restitution, the payor is entitled to restitution from either the unintended payee or from the beneficiary of the payment. The court held Petty, the 100 per cent shareholder of RLP Racing, Inc., is the beneficiary of the payments Cox made in attempting to perform under the illusory contract. The court ordered Petty to make restitution to Cox in the amount of $197,578.00 plus interest.
 I and II
Appellant moved to dismiss on the grounds of lack of jurisdiction over his person. The trial court found based upon the affidavits presented to it, that pursuant to R.C. 2307.382, Civ.R. 4(A), and Kentucky Oaks Mall Company vs. Mitchell Formal Wear, Inc. (1990),53 Ohio St.3d 73, it had jurisdiction over the persons and the subject matter. For this reason, the court overruled the motion to dismiss.
Appellant cites us to U.S. Sprint Communications Company,Ltd. Partnership vs. Mr. K's Foods, Inc. (1994), 68 Ohio St.3d 181
as authority for the proposition that in order to establish personal jurisdiction over a non-resident defendant, the plaintiff must show both that the requirements of RC. 2307.382 and Civ.R. 4.3(A) have been met, and also that a grant of personal jurisdiction over the defendant's person does not violate the defendant's due process rights.
R.C. 2307.382 provides in pertinent part:
 (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
(1) Transacting any business in this state;
 (2) Contracting to supply services or goods in this state;
 (3) Causing tortious injury by an act or omission in this state;
 (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.
Civ.R. 4.3 permits service of process on a non-resident defendant who falls within R.C. 2307.382.
Once jurisdiction is conferred by the statute, due process requires the defendant have minimum contacts with the forum, such that establishing jurisdiction does not offend traditional notions of fair play and substantial justice, International Shoe Companyvs. State of Washington (1945), 326 U.S. 310 at 316. The issue is whether the defendant purposely established minimum contacts in the forum state, Burger King vs. Rudzewicz (1985), 471 U.S. 462,474.
The term "Minimum contacts" has been defined as conduct creating a substantial connection to the forum state, creating continuing obligations between a defendant and a resident of the forum, or conducting significant activities within a state. McGeevs. International Life Insurance Company (1957), 355 U.S. 220,223; Travelers Health Association vs. Virginia (1950),339 U.S. 643, at 648.
Appellant asserts he did nothing to avail himself of judicial process in Ohio, initiated no activities with appellee in the State of Ohio, and had no business dealing with him here.
Appellee cites us to Kentucky Oaks Mall Company, supra,
wherein the Ohio Supreme Court held the provision of the long-arm statute providing for the "transacting of any business in this state" gave an Ohio court jurisdiction over a Kentucky resident even though the Kentucky resident did no business in Ohio and had no business presence in Ohio. The minimum contacts with Ohio were telephone contact with the Ohio resident to negotiate a lease, and mailing of checks to discharge lease obligations. Appellee argues the facts in the instant case are similar to the Kentucky Oaks
case, with telephone contact and mailing of checks constituting sufficient business contact to impose personal jurisdiction.
Appellee also argues the provision in Ohio's long-arm statute dealing with "tortious injury" independently satisfies the provisions of the long-arm statute, the civil rules, and the principles of due process. Appellee argues appellant knew the subject of the contract was illusory, yet appellant solicited and accepted nearly $200,000.00 pursuant to the illusory contract.
The test for minimum contacts is a facts-specific analysis, see Goldstein vs. Christiansen (1994), 70 Ohio St.3d 232. We find the undisputed facts of this case demonstrate appellant deliberately created a continuing obligation between himself and an Ohio resident, and conducted business within the State of Ohio. For this reason, we conclude appellant had minimum contacts with the State of Ohio, forseeably caused tortious injury to an Ohio resident, and could reasonably anticipate Ohio courts might take jurisdiction over his person. We conclude the provisions of the long-arm statute, the civil rules, and due process are not offended by the court of common pleas exercising jurisdiction over the person of the appellant and the subject matter of this action.
The first and second assignments of error are overruled.
 III
Appellant argues the court erred in determining the contract between appellant and appellee was illusory. Appellant argues appellee breached the contract between the parties when he failed to tender the remainder of the purchase price to appellant. We find the court properly applied Ohio law to the undisputed facts, and summary judgment was appropriate here.
The trial court reasoned there was no consideration for the payments because appellant did not and could not perform his obligations. The subject of the contract, the partnership, did not exist. The court concluded as a matter of law appellee did not breach the contract by not remitting the purchase price. As appellee points out, appellant has presented no legal theory which would entitle him to retain the monies paid by appellee on this contract, which purported to sell a share of something which did not, in fact, exist. The contract purported to transfer a 40 percent interest in a partnership which did not then and never had been in existence. The court was correct in concluding it was never possible, even at the time the contract was entered into, for appellant to perform his obligation under the contract. At the very least, appellant has been unjustly enriched by receiving the payments made to him under the contract.
Appellant urges appellee is entitled to restitution from RLP Racing, Inc., and in that, appellant is correct. However, appellee is also entitled to restitution directly from appellant, because the court correctly found the payment was made to appellant as an unintended payee and appellant is the actual beneficiary of the payment. Here, appellant was the 100 percent shareholder of the payee and the beneficiary of the advances from appellee on behalf of RLP Racing, Inc.
We agree with appellee there is no legal theory under which appellant may be permitted to retain a large sum of money he received for something which simply did not exist. The principles of contract law and equity require appellant make restitution of those funds.
The third assignment of error is overruled.
For the foregoing reasons, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed.
By Gwin, P.J., Reader J., and Wise, J., concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Richland County, Ohio, is affirmed. Costs to appellant.